UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| KENNETH and LISA BURMEISTER, | ) | No. 07 B 06868 |
| | ) | |
| | ) | |
| Debtors. ) | | Judge Goldgar |

## MEMORANDUM OPINION

This chapter 13 bankruptcy is before the court for a ruling on confirmation of the amended plan proposed by debtors Kenneth and Lisa Burmeister. Standing Chapter 13 Trustee Glenn Stearns objects to confirmation. He argues that the Burmeisters are not devoting all of their projected disposable income to the plan because their calculation of disposable income deducts mortgage payments they have stopped making on a home they intend to surrender. The trustee adds that the amended plan therefore has not been proposed in good faith. The Burmeisters disagree, claiming they correctly calculated their disposable income. For the reasons that follow, the amended plan will be confirmed over the trustee's objection.

### 1. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (L).

### 2. Facts

The following facts are taken from the parties' papers and are undisputed. Debtors Kenneth and Lisa Burmeister are married and have two children. Both the Burmeisters are

employed: Kenneth is a car mechanic, and Lisa is a legal assistant. The Burmeisters owned a house in Vernon Hills, Illinois, and sought to sell it. Although their efforts proved unsuccessful, they nevertheless bought a new house in Wauconda, Illinois, and moved into it, leaving the Vernon Hills house on the market. The Burmeisters therefore continued to have mortgages on both properties, but they stopped paying the mortgage on the Vernon Hills property.

On April 16, 2007, after their move to Wauconda, the Burmeisters filed a case under chapter 13 of the Bankruptcy Code. Along with their petition and schedules, the Burmeisters filed the required Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, Official Form 22C. The calculation of their annualized income on line 21 of Form 22C put them over the median income for a four-member Illinois household. On line 47 of the form, the Burmeisters listed deductions for payments of secured claims. The deductions included mortgage payments for the Wauconda property. The deductions also included mortgage payments for the Vernon Hills property, although the Burmeisters were no longer paying that mortgage and declared on the form: "Debtors wish to surrender this property." With a deduction based on the Vernon Hills mortgage payments, the Burmeisters had negative disposable income on line 58.

On June 29, 2007, the mortgagee on the Vernon Hills property moved to modify the automatic stay, and the motion was granted. After the stay was lifted, the Burmeisters filed an amended plan and Form 22C. The amended form continued to include deductions for mortgage payments on both the Wauconda and Vernon Hills properties, and so the Burmeisters continued to have negative disposable income. In their amended plan, the Burmeisters proposed to pay their unsecured creditors $16,666, or 19% of the $87,714 owed, over the five-year "applicable commitment period." *See* 11 U.S.C. §§ 1325(b)(4)(A)(ii). The plan also provided that the

-2-

Burmeisters would surrender the Vernon Hills property.

The trustee objected to confirmation of the amended plan. In his view, the Burmeisters were not proposing to pay all their projected disposable income to unsecured creditors, as section 1325(b)(1)(B) of the Bankruptcy Code requires, because "as of the effective date of the plan" the Burmeister had stopped making the Vernon Hills mortgage payments and intended to surrender the property. Eliminating the deduction for those mortgage payments, he said, would "result in a distribution to general unsecured creditors of over $75,000." The trustee also contended that because the Burmeisters were not committing all of their disposable income to the plan, the plan had not been proposed in good faith. The objection is fully briefed and ready for ruling.

### 3. Discussion

The trustee's objection is not well taken. In calculating their disposable income on Form 22C, section 707(b)(2)(A) of the Code not only permitted but compelled the Burmeisters to take deductions based on payments of all their mortgages – the Vernon Hills mortgage included – because those payments were "contractually due" when the petition was filed. 11 U.S.C. § 707(b)(2)(A)(iii)(I). The disposable income calculation was therefore correct.

Under section 1325(b)(2), a debtor's disposable income is figured by subtracting from "current monthly income" (a term itself defined in section 101(10A), 11 U.S.C. § 101(10A)) "amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor." Under section 1325(b)(3), the "amounts reasonable necessary" for a debtor whose income exceeds the median income in his home state "shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)." 11 U.S.C. § 1325(b)(3). Section 707(b)(2)(A) requires a debtor to subtract certain expenses from "current monthly

income." 11 U.S.C. § 707(b)(2)(A). One of the expenses a debtor must subtract is "the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition." 11 U.S.C. § 707(b)(2)(A)(iii)(I).

The phrase "contractually due" in section 707(b)(2)(A)(iii)(I) means a legal obligation under a contract, an obligation the debtor owes. *In re Walker*, No. 05-15010, 2006 WL 1314125, at *3 (Bankr. N.D. Ga. May 1, 2006). It makes no difference whether the debtor has actually been paying the obligation or intends to keep paying it. *In re Hartwick*, 359 B.R. 16, 19 (Bankr. D.N.H. 2007); *see also In re Benedetti* 372 B.R. 90, 95 (Bankr. S.D. Fl. 2007) (stating that the phrase "scheduled as contractually due to secured creditors" does not require that the debt actually be paid post-petition). Nor does it make a difference whether the debtor intends to surrender the collateral securing the obligation. *In re Randle*, 358 B.R. 360, 362-63 (Bankr. N.D. Ill. 2006), *aff'd sub nom. Randle v. Neary (In re Randle)*, No. 07 C 631, 2007 WL 2668727 (N.D. Ill. July 20, 2007); *In re Simmons*, 357 B.R. 480, 485-86 (Bankr. N.D. Ohio 2006).[1] Amounts "scheduled as contractually due" are determined as of the petition date. *In re Hayes*, 376 B.R. 55, 63 (Bankr. D. Mass. 2007).

On April 16, 2007, when the Burmeisters filed their petition, they owned the Vernon Hills property, were still parties to the mortgage on the property, and were still contractually obligated to make the mortgage payments. Because they were legally bound by the mortgage on the petition date, they were obligated to deduct those payments when calculating their disposable

---

[1]    The trustee argues that *Randle* and some of the other decisions reaching this conclusion about section 707(b)(2)(A)(iii)(I) are distinguishable because in those cases the debtor had filed under chapter 7. Section 1325(b)(3), however, commands the determination of disposable income for an above-median chapter 13 debtor under sections 707(b)(2)(A) and (B), and a decision about the meaning of section 707(b)(2)(A)(iii)(I) in a chapter 7 case is therefore as relevant as one addressing the issue in a chapter 13 case. The trustee has given no reason why section 707(b)(2)(A)(iii)(I) should be interpreted differently in chapter 7 and chapter 13 cases.

-4-

income on Form 22C.[2] That the Burmeisters had stopped making the payments and intended to surrender the property securing the mortgage is beside the point. The payments were nonetheless "contractually due" and so had to be deducted under section 707(b)(2)(A)(iii)(I). *See* 6 Keith M. Lundin, *Chapter 13 Bankruptcy* § 485.1 at 485-2 (3rd ed. 2000 and Supp. 2006) (noting that amounts "contractually due" under this provision will "include amounts that will never be paid through any Chapter 13 plan because . . . the collateral will be surrendered"). The Burmeisters therefore correctly deducted the mortgage payments on the Vernon Hills property and correctly calculated their disposable income.

The trustee contends, however, that under section 1325(b)(1) disposable income is determined "as of the effective date of the plan," meaning the date the plan is confirmed. Because the Burmeisters will not be making the mortgage payments on the confirmation date and will be surrendering the Vernon Hills property, he argues that the payments cannot be included in the disposable income calculation. At least one decision supports this analysis. *See In re Crittendon*, No. 06-10322 C-13G, 2006 WL 2547102, at *3-4 (Bankr. M.D.N.C. Sept. 1, 2006).

The trustee's reliance on the phrase "as of the effective date of the plan" is misplaced. He is right that the phrase refers to the date the plan is confirmed. *In re Jones*, 219 B.R. 506, 509 (Bankr. N.D. Ill. 1998). But he is wrong in thinking that the phrase has some effect on the disposable income calculation. *See Walker*, 2006 WL 1314125, at *5. "As of the effective date"

---

[2]      The deduction was not an option. Section 1325(b)(3) says the expenses of an above-median debtor "shall be determined" under section 707(b)(2)(A) and (B). 11 U.S.C. § 1325(b)(3). Section 707(b)(2)(A)(i) then directs a calculation under which the debtor's current monthly income is "reduced by the amounts determined under clauses (ii), (iii), and (iv)," 11 U.S.C. § 707(b)(2)(A)(i), and section 707(b)(2)(A)(iii) says the debtor's average monthly payments on account of secured debts "shall be calculated" in accordance with sections 707(b)(2)(A)(iii)(I) and (II). Although context sometimes suggests otherwise, the word "shall" in a statute typically means "must." *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432 n.9 (1995).

in section 1325(b)(1) only modifies "the plan provides" in section 1325(b)(1)(B), not "disposable income" later in the same section, and so these sections dictate *when* the plan has to provide for payment of all of the debtor's disposable income to unsecured creditors. *What* the debtor's disposable income is, on the other hand, depends on section 707(b)(2), at least where above-median debtors like the Burmeisters are concerned. *See* 11 U.S.C. § 1325(b)(3). Under that section, implemented by Form 22C, the calculation is made as of the petition date, not the confirmation date. In concluding otherwise, the court in *Crittendon* was mistaken.

The result here understandably rankles the trustee: why should the Burmeisters be able to lower their disposable income, paying unsecured creditors less under their plan, by deducting mortgage payments they are not making and will never make? The answer, satisfying or not, is that Congress said so in sections 1325(b)(3) and 707(b)(2)(A)(iii)(I) of the Code. Congress meant the disposable income calculation under BAPCPA to be mechanical. *In re Austin,* 372 B.R. 668, 676-77 (Bankr. D. Vt. 2007); *In re Gress,* 344 B.R. 919, 922 (Bankr. D. Mo. 2006). Although the consequence is that above-median debtors now figure their disposable income "based on a sort of parallel universe," *Gress,* 344 B.R. at 922, that was Congress's intention. In requiring deductions based on payments that are "contractually due," section 707(b)(2)(A)(iii)(I) is clear on its face. "If Congress intended to limit secured debt payments contractually due from debtors on the petition date to those where actual future payments will be made . . . , it knew how to do so." *In re Oliver,* No. 06-30076RLD13, 2006 WL 2086691, at *3 (Bankr. D. Or. June 29, 2006).

Moreover, the trustee has a remedy in cases like this. Any time after confirmation of a plan, but before completion of payments, section 1329 allows a plan to "be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim." 11 U.S.C. §

-6-

1329(a). One permissible modification is an increase in plan payments. 11 U.S.C. § 1329(a)(1). If, following confirmation, the trustee believes the Burmeisters' plan should be modified to increase their plan payments because they have stopped paying the Vernon Hills mortgage and have surrendered the property, he can file the necessary motion under section 1329(a). *See In re Witkowski*, 16 F.3d 739, 742 (7th Cir. 1994); *In re Drew*, 325 B.R. 765, 769 (Bankr. N.D. Ill. 2005). A motion to modify a confirmed plan, rather than an objection to the plan's confirmation, is the way to counter the peculiar effects of the disposable income calculation for above-median debtors. *See In re Nance*, 371 B.R. 358, 367 (Bankr. S.D. Ill. 2007).

That leaves the trustee's argument that the Burmeisters have not proposed their plan in good faith. Because the argument is premised on the notion that the Burmeisters have miscalculated their disposable income and there is no miscalculation, there is nothing to the argument. It is worth noting, however, that there would have been nothing to the argument anyway. Lack of good faith is not a proper basis for objecting to a miscalculation of disposable income. "Disposable income is 'determined under section 1325(b) rather than as an element of good faith under section 1325(a)(3).'" *In re Farrar-Johnson*, 353 B.R. 224, 232 (Bankr. N.D. Ill. 2006) (quoting *In re Barr*, 341 B.R. 181, 186 (Bankr. M.D.N.C. 2006)).

### 4. Conclusion

For the foregoing reasons, the amended plan of debtors Kenneth and Lisa Burmeister is confirmed. A separate order will be entered in accordance with this opinion.

Dated: November 16, 2007

A. Benjamin Goldgar
United States Bankruptcy Judge

-7-